IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 1:09-CR-388-06 |
| v. | : | |
| **KYLE ISHMAEL** | : | (J. Rambo) |

## **M E M O R A N D U M**

**I.      Introduction**

Presently before the court is the issue of whether Defendant, Kyle Ishmael, is entitled to the safety valve provisions of U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f). By way of background, Defendant was indicted by a federal grand jury on December 2, 2009. He and eight other individuals were charged with conspiracy to possess with intent to distribute 50 grams or more of cocaine base and cocaine in violation of 21 U.S.C. § 846. On October 12, 2010, Defendant entered a guilty plea to a superseding information that charged him with distribution of five grams or more of cocaine base in violation of 21 U.S.C. § 841.

On December 10, 2010, the probation office prepared a presentence report ("PSR"). The PSR found that Defendant was subject to the five-year mandatory sentence under 21 U.S.C. § 841 and did not recommend application of the safety valve under U.S.S.G. § 5C1.2. On February 2, 2011, Defendant filed a written objection to the PSR objecting to, *inter alia*, the failure to recommend the safety valve. On February 7, 2011, the probation office filed an addendum to the PSR indicating that Defendant was not eligible for the safety valve because he "did not provide truthful information to investigators" in violation of U.S.S.G. § 5C1.2 and

18 U.S.C. § 3553(f)(5). On February 18, 2011, Defendant filed a motion to compel disclosure of the specific factual basis for the Government's contention that Defendant failed to provide truthful information. On March 7, 2011, the Government responded arguing that, pursuant to relevant caselaw, the Government is not required to disclose its evidence prior to a hearing. The Government argues that disclosure would provide Defendant with a roadmap of what the Government expects Defendant to say, which is inconsistent with the requirement that Defendant truthfully provide the Government with all information. On March 9, 2011, the court held an evidentiary hearing to address these issues and take evidence regarding the applicability of the safety valve. At the hearing, Defendant requested that the court apply the safety valve during sentencing. For the reasons that follow, the court will deny Defendant's request for application of the safety valve and Defendant's motion to compel is denied as moot.

**II.        Standard**

Congress enacted the safety valve provision, 18 U.S.C. § 3553 (f), in order to mitigate the harsh effect of mandatory minimum sentences on certain first-time offenders. *See United States v. Miranda-Santiago*, 96 F.3d 517, 527 & n.22 (1st Cir. 1996) (citing H.R. Rep. No. 103-460, at 4 (1994)); *United States v. Ortiz-Santiago*, 211 F.3d 146, 150 (1st Cir. 2000). The Sentencing Commission then incorporated the statutory text verbatim into the Sentencing Guidelines. *See* U.S.S.G. § 5C1.2. When applicable, these provisions mandate both a reduction of the defendant's offense level and judicial disregard of mandatory minimum sentences. The safety valve is applicable if:

> 1. The defendant does not have more than 1 criminal history point . . . ;
>
> 2. The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> 3. The offense did not result in death or serious bodily injury to any person;
>
> 4. The defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . .; and
>
> 5. Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553 (f); U.S.S.G. § 5C1.2.

Defendant bears the burden of showing his entitlement to application of the safety valve. *See United States v. Acosta*, 283 F. App'x 899, 905 (3d Cir. 2008); *United States v. Richardson*, 225 F.3d 46, 53 (1st Cir. 2000). Thus, the initial burden of proof "is incontestably on the defendant to demonstrate by a preponderance of evidence that he is eligible for the reduction." *United States v. Shrestha*, 86 F.3d 935, 940 (9th Cir. 1996); *see also United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996) ("It is up to the defendant to persuade the district court that he has 'truthfully provided' the required information and evidence to the Government.").

The court's determination is fact-specific, one which depends on credibility determinations. The court must provide more than "bare conclusions" for support of its determination. *United States v. Ventura-Cruel*, 133 F. Supp. 2d 138,

142 (D. P.R. 2001). "Absent either specific factual findings or easily recognizable support in the record," the safety valve cannot be avoided. *Id.* (citing *Miranda-Santiago*, 96 F.3d at 528-30 (1st Cir. 1996)).

The safety valve provision requires an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses. *See United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996). It is not sufficient for a defendant to merely "accede to the government's allegations." *United States v. Wrenn*, 66 F.3d 1, 3 (1st Cir. 1995). However, the defendant need not make the disclosure in any particular way. *See Montanez*, 82 F.3d at 522. The defendant is only required to "truthfully provide all the information he possesses concerning the crime," *Richardson*, 225 F.3d at 53, by way of "an affirmative act of cooperation with the government." *Wrenn*, 66 F.3d at 3.

The defendant must provide "all the information he possesses." *Ventura-Cruel*, 133 F. Supp. 2d at 142. Included in this definition is "all information" concerning the offense of conviction and the acts of others if the offense is a conspiracy or involves joint activity. *Id.* (citing *United States v. Acosta-Olivas,* 71 F.3d 375, 377-79 (10th Cir. 1995)). The defendant not only must provide all the information he has regarding his own involvement in the crime, he also must provide all the information he has relating to other participants as well. *Id.* In this respect, the requirement to provide "all the information" is read broadly. *Id.*

Courts have recognized the high degree of cooperation required by 18 U.S.C. § 3553 (f)(5) (regarding requirement for defendant to truthfully provide all information to the Government). For example, just because a defendant accepted responsibility for his actions, entitling defendant to a reduction in his offense level

under U.S.S.G. § 3E.1.1(a), the acceptance of responsibility provisions in the guidelines do not subsume all of defendant's responsibilities under the safety valve provisions. *United States v. Sabir*, 117 F.3d 750, 752 (3d Cir. 1997) (citing *United States v. Arrington*, 73 F.3d 144 (7th Cir. 1996)). In *Sabir*, the court stated:

> We agree with the district court that the admission of responsibility necessary to obtain a reduction under § 3E1.1(a) is not necessarily sufficient to satisfy § 3553(f)(5). Section 3553(f)(5) requires more cooperation than § 3E1.1(a): § 3553(f)(5) requires the defendant to provide "all information . . . concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," whereas § 3E1.1(a) requires that he admit "the conduct comprising the offense(s) of conviction." The distinction between the two is not insignificant. Although § 3E1.1(a) forbids a defendant from falsely denying relevant conduct . . . it imposes no duty on a defendant to volunteer any information aside from the conduct comprising the elements of the defense. In contrast, § 3553(f) states that a defendant must disclose "all information" concerning the course of conduct – not simply the facts that form the basis for the criminal charge.

*Id.* at 752-53 (quoting *Arrington*, 73 F.3d at 149).

### III.        Discussion

The Government only disputes the truthfulness of Defendant's proffer elicited during a Federal Bureau of Investigation ("FBI") interview on April 19, 2010, and does not dispute that Defendant satisfies the first four safety valve requirements. In his proffer, Defendant offered information regarding his and other individuals' involvement in the distribution and sale of crack cocaine. Defendant described the roles that he and others played in the packaging and sale of crack cocaine. Defendant's statement includes information regarding who supplied him with crack cocaine, how much he sold, to whom he sold, the price at which he sold

5

and the period of time during which he sold crack cocaine. The statement also provided information regarding his prior distribution of marijuana and the events that led to his involvement in the sale of crack cocaine, which included his introduction to three individuals referred to as "Flaco," "Dyckman," and "Malice." Defendant was also shown nine photographs of other individuals, some of which were co-defendants. He was able to identify each individual and provide some information regarding those individuals.

Although the Defendant cooperated with the authorities, the extent of his cooperation is suspect. Defendant's proffer contains several equivocations that the court must consider when determining the applicability of the safety valve. *See United States v. Mato*, 328 F.3d 34, 39 (1st Cir. 2003) ("[N]othing short of truthful and complete disclosure is a condition precedent to relief under the safety valve . . . a safety valve debriefing is a situation that cries out for straight talk; equivocations, half truths and veiled allusions will not do.") For example, Defendant claims in his proffer that he does not know the quantity of crack cocaine provided to Malice by Flaco. He claims he does not know the identity of Malice's customers or how much crack cocaine Malice sold. Defendant is also unaware of the circumstances surrounding the death of an individual who previously supplied Defendant with marijuana.

Standing alone, these uncertainties are not enough to cause the court to question the truthfulness of Defendant's proffer. However, at the hearing, Defendant did nothing more than review the contents of his proffer and testify that the statement was truthful and complete. On cross-examination, the Government pressed Defendant on several issues. Notably, Defendant claimed in his proffer and

in his testimony that he sold crack cocaine to approximately fifteen individuals. These individuals would contact Defendant via telephone when they wanted a delivery of crack cocaine. Defendant testified that he knew these individuals because he previously sold marijuana to them. When questioned about their identities, Defendant could only recall three first names and an apparent nickname.[1] Defendant was unable to provide any other identification or information regarding these individuals. Defendant was not aware whether these individuals identified with any particular group or gang. Defendant had no recollection as to where these sales would occur, stating only that they would occur "wherever [his customers] would call him to." Defendant could not recall any further information regarding these individuals because, as he testified, "All these people I never hung out with. I just knew them from hanging out." The court finds it incredible that Defendant could not recall *any* further information regarding these individuals and is somewhat confounded by his explanation of his inability to do so. It is clear that Defendant had a prior relationship with these individuals extending back to when he sold marijuana to them.[2] These individuals would have, at a minimum, met the Defendant several times. They possessed each other's phone numbers and would talk by phone prior to meeting. That Defendant can not remember any other information about these individuals and is unable to recall any location where he met them strikes the court as disingenuous and supports a finding that Defendant has not met his burden of showing full and complete truthfulness of the sort contemplated in

---

[1] When asked to identify people he sold crack cocaine to, Defendant was slow to recall names. He eventually identified Will, Mark, John, and "B.J."

[2] The exact length of this period of time is undeterminable from the record.

18 U.S.C. § 3553 (f). *See Montanez*, 82 F.3d at 523 (upholding denial of safety valve where defendant's proffer contained several suspicious omissions including the identity of his drug supplier, reasoning that the Government was "perfectly free to point out the suspicious omissions at sentencing, and the district court [was] entitled to make a common sense judgment.") Thus, on this point alone, the court would deny the application of the safety valve.

Furthermore, the testimony of FBI agent Christopher T. Nawrocki casts additional doubt regarding the truthfulness of Defendant's proffer. Nawrocki, who works on the York County Drug Task Force and was involved in the investigation of this case, testified about several inconsistencies between Defendant's proffer and the proffer of two cooperating defendants. Although the court is not privy to the identification of the two cooperating defendants, we can safely assume they are either co-defendants Steven C. Brown (a.k.a. "B.I."), Adrian K. Darden, Dyckman Martinez, Deborah Sue Grove (all of whom have plead guilty and have been sentenced); Wilfredo Ortiz, Jr. (a.k.a. "Malice"), Crystal Brown (both of whom have plead guilty and are presently awaiting sentencing); Hector Marreror (who signed a plea agreement and is presently awaiting scheduling for plea); or Francis C. Tyler (who has not yet signed a plea agreement and is currently scheduled for trial).

Nawrocki identified several inconsistencies between Defendant's proffer and cooperating defendants' proffers. Notably, Defendant represents his involvement as being minimal when compared to the two cooperating defendants' statements, both of which suggest that Defendant was involved to a considerably greater extent and scope. For example, Defendant said he first met Flaco, Malice, Dyckman, and B.I. in March 2009. The cooperating defendants' statements indicate

8

that Defendant met these individuals in 2008. Defendant also claimed that he started selling cocaine in early May 2009 and he sold for three weeks until a search warrant was executed on May 27, 2009. The cooperating defendants' statements, however, indicate that Defendant started selling cocaine as early as January 2009. Further, while Defendant stated that he sold approximately ten eight-balls (one eight-ball is equivalent to approximately 3.5 grams of crack cocaine) per day at a ten dollar profit per eight-ball, one of the cooperating defendants indicated that Defendant was earning considerably more, referring to him as a "good earner" and claiming that Defendant might earn as much as $15,000 on a good day. A cooperating defendant also said that Defendant sold to a "great deal" of customers in York and identified an organized group to which Defendant would sell and the location where Defendant would sell to those individuals. Finally, although Defendant maintains that he had no involvement in the packaging of crack cocaine, Nawrocki testified that a cooperating defendant stated that Defendant was a "full participant" in both the packaging and sale of "significant" quantities of crack cocaine. These inconsistencies cast further doubt as to whether Defendant exhibited the type of complete and overt truthfulness necessary to benefit from the application of the safety valve.

  At the hearing, Defense counsel raised a hearsay objection to the portion of Nawrocki's testimony regarding the out of court statements of the two cooperating defendants. The court permitted the testimony and considered it in our disposition of this matter for several reasons. First, the Guidelines permit the use of hearsay evidence to resolve disputed facts "provided the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

Further, it is well-established that "the district court may consider hearsay evidence in determining [a] sentence, but the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect to defendant's right to due process." *United States v. Rucker*, 133 F. App'x 187, 193 (6th Cir. 2005) (quoting *United States v. Robinson*, 898 F.2d 1111, 1115 (6th Cir. 1990)).

The determination of whether hearsay is sufficiently reliable to warrant credence for sentencing purposes necessarily depends upon the particular circumstances of each case. *United States v. Wise*, 976 F.2d 393, 403 (8th Cir. 1992). Courts have found sufficient indicia of reliability in a situation in which the evidence was gathered from several independent sources yet did not conflict. *See id.* (citing *United States v. Carmona*, 873 F.2d 569, 574-75 (2d Cir. 1989)). Here, Nawrocki testified that the statements of the two cooperating defendants, although containing "slight variations," were not inconsistent as to Defendant's involvement in the crime. Defendant had the opportunity to cross-examine Nawrocki, but failed to adduce any evidence that would cause the court to question the reliability of the cooperating defendants' statements.

Further, statements against penal interest are deemed sufficiently reliable for use at sentencing, *United States v. Valencia*, 75 F. App'x 525, 529 (7th Cir. 2003) (citing *United States v. Szakacs,* 212 F.3d 344, 352-53 (7th Cir. 2000)), and, in fact, are not hearsay at all under the statement against penal interest exclusion to the hearsay rule. *Fed. R. Evid.* 804(b)(3). In *Wise*, 976 F.2d at 403-04, the court considered the reliability of hearsay statements made by a probation officer in a sentencing hearing. Wise's probation officer relied on self-incriminatory statements

made by two individuals who were involved in the same offense with which Wise was charged. *Id.* The court determined that the self-incriminatory statements made by other individuals involved in the offense "fell within the definition of a statement against penal interest excepted from the exclusions of the hearsay rule by Federal Rule of Evidence 804(b)(3) ([putting] aside that Rule's precondition of the witness's unavailability.)" *Id.* As a result, the Eighth Circuit Court of Appeals concluded that the officer's hearsay testimony was sufficiently reliable to support the district court's findings and Wise's resulting sentence enhancement. *Id.*; *see also United States v. Shackelford*, 462 F.3d 794, 796 (8th Cir. 2006) (deciding hearsay statements relayed at a sentencing hearing were statements against penal interest, and "[t]he fact that the . . . statements qualified for at least one exception from the hearsay rule renders them more reliable than they otherwise would have been"). Here, all of the cooperating defendants have either plead guilty and been sentenced, plead guilty and are awaiting sentencing, signed a plea agreement and are awaiting scheduling for plea, or are scheduled for trial. Thus, as in *Wise*, it is a safe assumption that any self-incriminating statements made by the cooperating defendants fall within the statement against penal interest exception to the hearsay doctrine and are, in any event, sufficiently reliable to be considered here.

In short, the court finds that Defendant did not satisfy his burden of showing by a preponderance of the evidence that his proffer and testimony were truthful. Accordingly, Defendant is not entitled to the benefit of the safety valve

under 18 U.S.C. § 3553 (f) and U.S.S.G. § 5C1.2 at this time.[3] An appropriate order will be issued.[4]

                                                       s/Sylvia H. Rambo
                                                       United States District Judge

Dated: March 16, 2011.

---

[3] Because the sentencing hearing, which is currently scheduled for March 30, 2011, has not yet occurred, Defendant is not entirely precluded from benefitting from the safety valve. *See United States v. Tournier*, 171 F.3d 645 (8th Cir. 1999) (district court's finding that defendant was eligible for safety valve relief under § 5C1.2 was not clear error, even though defendant repeatedly lied to Government interviewers about aspects of offense and did not truthfully cooperate until just before her sentencing hearing; defendant's full and truthful cooperation, though grudging and fitful, was complete before sentencing hearing).

[4] This matter initially came to the court on a motion to compel wherein the Defendant requested disclosure of the evidence upon which the Government decided that Defendant was untruthful for purposes of the applicability of the safety valve. Because the court held a hearing where both parties offered evidence regarding Defendant's truthfulness, Defendant's motion to compel can now be denied as moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | No. 1:09-CR-388-06 |
| **v.** | : | |
| | : | |
| **KYLE ISHMAEL** | : | (J. Rambo) |
| | : | |

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED** as follows**:**

1. Defendant's request for application of the safety valve provisions of U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f) is **DENIED**;

2. Defendant's motion to compel (Doc. 285) is **DENIED** as moot.

             s/Sylvia H. Rambo
             United States District Judge

Dated: March 16, 2011.